THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL F. YOUNG, INC. | : | CIVIL ACTION |
| | : | NO. 13-02431 |
| v. | : | |
| | : | |
| SENECA INS. CO. | : | |

O'NEILL, J.                                                                                                                           October 30, 2014

### MEMORANDUM

Plaintiff Daniel F. Young, Inc. has sued Seneca Insurance Company for breach of contract and estoppel.[1] Presently before me are defendant's motion for summary judgment, plaintiff's response thereto and all supplemental briefs, replies and responses. For the following reasons I will grant defendant's motion.

### BACKGROUND

Plaintiff Daniel F. Young, Inc. (DFY) is a full service logistics organization that provides "door to door" services for the transport of cargo including the receipt and storage of cargo in warehouses and transport of cargo by water, air or ground. Dkt. No. 17-1 at 1. Young Sea Cargo Corporation, a wholly owned subsidiary of plaintiff, provides ocean transportation. Id. Plaintiff stored ductile iron pipes owned by American International Contractors, Inc. (AICI) at plaintiff's warehouse located at 7526 Connelly Drive, Hanover, Maryland. Dkt. No. 18-1 at ¶¶ 4-5. AICI hired plaintiff to transport the pipes to Qatar for purchase by the Army Corps of Engineers. Id. at ¶ 9. On April 4, 2011, AICI's ductile pipes were damaged by an employee of

---

[1] Plaintiff initiated this action on April 4, 2013 in the Court of Common Pleas for Philadelphia County. On May 2, 2013 Seneca filed a Notice of Removal and asserted that the claim arose under federal law because the services provided by plaintiff were governed by 46 U.S.C. § 1301. Dkt. No. 1 at ¶ 10. The Carriage of Goods by Sea Act (COGSA) governs "all services provided by DFY and Young Sea Cargo to AISCI" and the combined transport bill of lading issued by Young Sea Cargo. Id. at ¶ 10-11.

plaintiff while being loaded onto a flatbed truck.  Id. at ¶ 6.  The Army Corps of Engineers rejected AICI's pipes when they arrived in Qatar due to the damage sustained at plaintiff's Hanover facility.  Id. at ¶ 9-10.  Subsequently AICI made a demand upon plaintiff for the replacement cost of the pipes and for the damages it sustained.  Id. at ¶ 11.  Plaintiff ultimately paid $143,798.79 to AICI on November 3, 2011.  Id. at ¶ 12.

One week after the pipes were damaged, on April 10, 2011, Young Sea Cargo issued a combined transport bill of lading incident to shipment of the ductile pipes that contained a provision limiting liability to $500 per package.  Id. at ¶ 8.  The bill of lading also stated that in order to obtain higher limits of liability the shipper must declare a greater value and pay additional agreed upon freight.  Id.  Specifically, the bill of lading issued by Young Sea Cargo states: "[t]his bill of lading limits Young Sea Cargo Corp., and subsidiaries' liability to $500.00 per package (or customary freight unit).  To obtain higher limits of liability, shipper must declare a greater value and pay additional freight to be agreed.  Declared Value in U.S. $ ____."  Dkt. No. 17-6 at 2.  The bill of lading also contains the following Himalaya Clause[2] extending the liability limitation to all other carriers and agents providing services on the transportation of the goods from inception to final destination:

> THIRD PARTIES:    Participating Carriers and other Persons engaged by the Carrier in the Carriage of Goods under this Bill of Lading shall be entitled to all the defenses, exceptions, limitations and exonerations from liability provided under applicable law or under this Bill of Lading.  In contracting for the foregoing defenses, exemptions, limitations and exonerations from liability, the Carrier is acting as agent and trustee for and on behalf of such Persons, each of whom shall to this extent be deemed to be a party to the contract evidenced by this Bill of Lading, regardless for

---

[2] A Himalaya Clause is a contractual provision that purports to extend liability limitations to downstream parties.  See Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 20 & n.2 (2004) ("Clauses extending liability limitations take their name from an English case involving a steamship called *Himalaya*.").

>whom acting or by whom retained.  In no event shall the aggregate of the amounts recoverable under this Bill of Lading from Carrier, Participating Carriers and other Persons engaged by the Carrier exceed the limits established by this Bill of Lading.

Dkt. No. 17-6 at 4.

Defendant Seneca issued a commercial insurance policy to plaintiff that included coverage for the personal property of others and that specifically identified the location of the Hanover, Maryland warehouse where the pipes were damaged.  Dkt. No. 18-1 at ¶¶ 3, 5.  The policy provision governing the extension of replacement cost to personal property of others includes the following limitation on coverage:

>If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

Dkt. No. 17-5 at 44.  Defendant contends that the Young Sea Cargo-issued bill of lading constitutes a written contract covered by the limitation included in the Seneca policy provision governing the extension of replacement cost to personal property of others.  See Dkt. No. 17-1 at 10.

On August 5, 2011, plaintiff submitted a property loss notice to defendant.  Dkt. No. 18-1 at ¶ 13.  Defendant acknowledged receipt of plaintiff's claim and reserved its rights under the policy issued to plaintiff but did not "specifically reserve any rights to assert any type of limitation of liability provision contained within coverage for personal property of others." Id. at ¶ 15.  On February 3, 2012, well after plaintiff had made its payment to AICI, defendant advised plaintiff that any payment it would make to plaintiff for the damaged pipes claim under the Seneca-issued policy was limited to $500 per container as a result of the limitation of liability

provision contained in the combined transport bill of lading.  Defendant issued two payments to plaintiff totaling $2,000 based on plaintiff's representation that the pipes were loaded into four containers.  Dkt. No. 17-1 at 8.  After defendant's February 3, 2012 letter, plaintiff made several demands for reimbursement from defendant "pursuant to the personal property of others coverage and on a replacement cost basis," all of which were denied by defendant.  Dkt. No. 18-1 at ¶ 21.

In its complaint, plaintiff contends that the limitation of liability clause contained in the bill of lading is inapplicable to its claim for coverage for the damaged pipes because the damage to AICI's personal property occurred prior to Young Sea Cargo's issuance of the bill of lading.  Id. at ¶¶ 23-24.  Additionally, plaintiff contends that defendant's failure to perform a timely investigation and to timely notify plaintiff of its position caused plaintiff to reasonably believe that it was entitled to reimbursement on a replacement cost basis when it issued payment to AICI.  Id. at ¶ 27-28.  Plaintiff also asserts that defendant was under a legal duty to timely advise plaintiff of specific rights or defenses being reserved and to identify the policy provisions upon which those rights or defenses are based.  Id. at ¶ 32.  Finally, plaintiff asserts that defendant's refusal to remit payment to plaintiff for the replacement cost of its payment to AICI constitutes a breach of contract.  Id. at ¶ 35.

Conversely, in its motion for summary judgment defendant asserts that the limitation of liability clause contained in the bill of lading operates because the bill of lading was effective for "the entire time that the goods were in the care, custody and control of Young Sea Cargo."  Dkt. No. 17-1 at 12.  Young Sea Cargo engaged plaintiff to accept delivery of the pipes from AICI at the Hanover warehouse and load them into containers for transport.  Id. at 19.  Therefore defendant asserts that the terms and conditions of the bill of lading including the limitation of

liability provision apply to plaintiff's claim for the damaged pipes and limit defendant's liability to the amount paid. Id. Defendant also contends that plaintiff is not entitled to replacement cost of the damaged pipes under the Seneca Policy because valuation is limited to the amount identified in the bill of lading, in this case, $500 per package. Id. at 20-22. Finally, defendant asserts that plaintiff has not established any breach of duty or justifiable reliance to support its estoppel claim. Id. at 22, 28-30.

## STANDARD OF REVIEW

Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex, 477 U.S. at 322-23. If the movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a genuine dispute. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. A fact is "material" if it might affect the outcome of the case under governing law. Id.

To establish "that a fact cannot be or is genuinely disputed," a party must:

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot

produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir.1989). The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant. Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir.1978) (citations and quotation marks omitted).

## DISCUSSION[3]

### I. Breach of Contract – Duty to Pay Replacement Cost

Plaintiff argues that defendant breached its obligations under its insurance contract with plaintiff by failing to pay the full replacement cost of the AICI pipes. See Dkt. No. 18 at ECF p. 15-17. In moving for summary judgment, defendant contends that plaintiff's breach of contract claims fail as a matter of law because defendant's valuation of the ductile pipes was based on unambiguous policy language limiting defendant's liability to the amount plaintiff legally owed AICI by operation of the bill of lading, which defendant contends was effective at the time the pipes were damaged because the bill of lading covered the entire time the pipes were in plaintiff's care, custody and control. Dkt. No. 17-1 at 1. I agree with defendant.

To establish a breach of contract under Pennsylvania law plaintiff must demonstrate three elements: (1) the existence of a contract; (2) a breach of a duty imposed by a contract; and (3)

---

[3] Importantly, plaintiff has not filed a statutory bad faith claim, stating instead "[w]hile DFY is not asserting that Seneca is guilty of bad faith, per se, Seneca did not have a reasonable basis for delaying the investigation . . . " Dkt. No. 18 at ECF p. 17. Therefore, though plaintiff's pleadings involve significant focus on allegations of defendant's alleged bad faith, its claim is limited to the breach of contract theories pled in the complaint.

-6-

damages.  See e.g., Siematic Mobelwerke GmbH & Co. KG. v. Siematic Corp., 643 F. Supp. 2d 675, 685 (E.D. Pa. 2009).  Unambiguous language is given its plain meaning and "when the words of a contract are 'clear and unambiguous,' the intent of the parties is derived from the express language of the agreement, and 'the focus of interpretation is upon the terms of the agreement as manifestly expressed, rather than as, perhaps, silently intended.'"  Id., quoting, Steuart v. McChesney, 498 Pa. 45, 49 (1982).  Insurance policies are contracts and are governed by the rules of contract interpretation.  Penn-Am. Ins. Co. v. Peccadillos, Inc., 27 A.3d 259, 264-65 (Pa. Super. Ct. 2011).  Therefore, "if the terms of a policy are clear, this Court cannot rewrite it or give it a construction in conflict with the accepted and plain meaning of the language used."  Wall Rose Mut. Ins. Co. v. Manross, 939 A.2d 958, 962 (Pa. Super. Ct. 2007).

Additionally, in Pennsylvania, the duty of good faith and fair dealing is implicit in all insurance contracts.  Simmons v. Nationwide Mut. Fire Ins. Co., 788 F. Supp. 2d 404, 408-09 (W.D. Pa. 2011).  This duty prevents an insurance company from "fail[ing] to investigate a claim objectively, den[ying] an insured's claim even if good cause exists, or fail[ing] to inform an insured of all benefits and coverage that may be available."  Galman Grp. v. Am. Safety Indem. Co., No. 03-4563, 2004 WL 966239, at *2-3 (E.D. Pa. May 5, 2004).[4]

Because a contract is interpreted based on the terms of the agreement which are manifestly expressed in writing, I must first determine whether the plain language contained in the Seneca policy and the Young Sea Cargo bill of lading are unambiguous.  E.g., Rich Maid Kitchens, Inc. v. Pa. Lumbermens Mut. Ins. Co., 641 F. Supp. 297, 307 (E.D. Pa. 1986).  In this case, the Seneca policy makes clear that coverage extends to loss of or damage to the personal

---

[4]   See also New Concept Beauty Acad., Inc. v. Nat'l Mut. Ins. Co., No. 97-5406, 1997 WL 746203, at *2 n.2 (E.D. Pa. Dec. 1, 1997) (describing district court interpretations of Supreme Court of Pennsylvania breach of good faith and fair dealing cases).

property of others which is in the care custody or control of the insured. However, the valuation of such property is governed by any "written contract which governs [insured's] liability for loss or damage to that item . . . ." Dkt. No. 17-1 at 21. This policy provision clearly states that the insured will not recover full replacement cost of such property if the property is subject to a written contract that establishes the extent of the insured's liability for it. Id. Instead, valuation of the property is based on the amount for which the insured is liable under the relevant written contract. Id.

The bill of lading constitutes a "written contract" that governs plaintiff's liability for loss of or damage to the AICI pipes. "A bill of lading operates as both a basic transportation contract between a consignor and a carrier and as a receipt." S. Pac. Transp. Co. v. Commercial Metals Co., 456 U.S. 336, 342 (1982). Additionally, "the terms and conditions of a bill of lading bind the shipper and all connecting carriers." Id. Consequently, the bill of lading issued by Young Sea Cargo extends to plaintiff as well. The plain language in the bill of lading makes clear that Young Sea Cargo and its subcontractors and agents, including, in this instance, plaintiff, are only liable for the loss of or damage to the personal property of others in the amount of $500 per package unless AICI had specified another value on the front page of the bill of lading. It did not. Because defendant complied with the terms contained in the bill of lading by tendering $2,000 to plaintiff in response to plaintiff's claim for the damaged pipes, to determine whether defendant breached its obligations to plaintiff, I must determine whether the bill of lading was in effect at the time the pipes were damaged.

Plaintiff contends that the bill of lading does not limit defendant's liability because it was not issued until after the AICI pipes were damaged. Dkt. No. 1 at 10 (Compl., ¶ 24-25); Dkt. No. 18 at ECF p. 17. By its terms, however, the bill of lading was effective for the entire time

that the pipes were in the care custody and control of Young Sea Cargo.  Dkt. No. 17-6 at 4.  Accordingly, defendant contends that because the pipes were damaged after they were tendered by AICI and while plaintiff was loading them for transport at the Hanover warehouse, they were damaged while Young Sea Cargo was responsible for any damage to the pipes.  Dkt. No. 17-1 at 12.  I agree with defendant and find that the bill of lading was effective for the entire period that Young Sea Cargo was responsible for the carriage of the AICI pipes.

The Carriage of Goods by Sea Act governs all bills of lading between the United States and foreign ports.  Kawasaki Kisen Kaisha Ltd. V. Regal-Beloit Corp., 561, U.S. 89 (2010).  The Young Sea Cargo bill of lading also explicitly states that it is governed by COGSA.  Dkt. No. 17-1 at 12.  The language in the bill of lading stating that Young Sea Cargo is responsible for the carriage of goods from the place of receipt to the place of delivery extends COGSA's terms to the entire time that the goods are in the custody of the carrier.  See Amazon Produce Network, LLC v. M/V Lykes Osprey, 553 F. Supp. 2d 502, 507 (E.D. Pa. 2008).  COGSA permits the extension of its coverage to inland transportation by bills of lading, which clearly occurred here based on the plain language of the Young Sea Cargo bill of lading.  "The same liability limitation in a single bill of lading for international intermodal transportation often applies both to sea and to land . . . Such liability clauses are regularly executed around the world."  Norfolk Southern Ry. Co. v. Kirby, 543 U.S. 14, 28-29 (2004).  Therefore, that the bill of lading was signed after the period of Young Sea Cargo's custody and control began does not bear on the scope of its applicability.  Rather, because the bill of lading's terms are plain on their face and do not conflict with COGSA, the bill of lading governs this claim.  See e.g., Rosario v. H&M Int'l Transp. Serv., Inc., No. 06-824, 2007 WL 2065828, at *4 (D.N.J. July 13, 2007).  Plaintiff's argument that it did not expect to be governed by the limitation of liability contained in the "boilerplate

language on the bill of lading" is insufficient to overcome the plain language set forth in the Seneca policy and the bill of lading.  Dkt. No. 18 at ECF p. 16.

Therefore, because the plain language of the Seneca policy and the bill of lading are clear that coverage is limited to $500 per container, and because defendant remitted payment to plaintiff in the amount of $2,000 based on plaintiff's assertion that four containers of AICI pipes were damaged, I find defendant had no contractual duty to cover the full replacement costs of the AICI pipes.  There is no material issue of fact as to whether defendant's payment to plaintiff of $2,000 is a breach of its contractual obligations to plaintiff.

## II.     Breach of Contract – Failure to Conduct a Timely Investigation

Plaintiff also contends that it was "forced to pay AICI for the damaged pipes" and that defendant "knew that DFY was getting pressured to make the payment [to AICI] and [Seneca] failed to make a timely decision" in breach of its obligations to plaintiff.  Dkt. No. 18 at ECF p. 15.  I disagree and find that defendant's investigation of plaintiff's claim comports with the obligation to investigate described in the policy defendant issued to plaintiff.

The Seneca-issued policy clearly provides a process for the investigation and settlement of claims.  Under the policy, defendant may examine plaintiff's records, obtain copies of any other relevant insurance policies, inspect damaged or lost property, review inventories of lost and damaged property, examine insureds under oath and conduct an investigation regarding valuation all prior to issuing a coverage determination.  Dkt. No. 20 at 11;  Dkt. No. 17-5 at 39-40 (Ex. A, Seneca Policy Declarations Page).

Though plaintiff claims that "no factual investigation was needed to determine that Section G.b.4 [of the policy] may apply in this situation," defendant contends that before making a coverage determination it needed to determine whether plaintiff was covered by any other

policy, whether the pipes could be repaired or salvaged and whether AICI had declared a greater value than $500 per package and how many packages of pipes were damaged. Dkt. No. 20 at 10-11.

Plaintiff's contention that defendant knew that plaintiff was under pressure to pay AICI full replacement value of the pipes does not establish that defendant purposefully prolonged its investigation. Rather, on the record before me defendant properly availed itself of the methods of investigation unambiguously outlined in the policy before making a determination about coverage and valuation. Because plaintiff has presented no evidence that defendant was not entitled to undertake the investigative steps it took or that defendant violated an agreed upon timeline for making its coverage determination, I agree with defendant that it did not unreasonably delay its coverage investigation.

### III.   Estoppel

Plaintiff contends that defendant "failed to conduct a reasonable and timely investigation and therefore should be estopped from denying coverage on a replacement cost basis." Dkt. No. 27 at 6; see also Dkt. No. 18 at ECF p. 18-27. Defendant counters that plaintiff's estoppel claims fail because plaintiff cannot prove that defendant failed to satisfy any duty or that plaintiff justifiably relied to its detriment on defendant's conduct or representations. Dkt. No. 17-1 at 1. I agree with defendant and find that even if plaintiff relied on a belief that defendant would cover full replacement costs for the pipes when plaintiff made its payment to AICI, such reliance was neither justified nor reasonable.

Under Pennsylvania law "a party seeking to establish an estoppel must show 'an inducement by the party sought to be estopped . . . to the party who asserts the estoppel . . . to believe certain facts to exist – and the party asserting the estoppel acts in reliance on that

belief.'" Merchants Mut. Ins. Co. v. Artis, 907 F. Supp. 886, 891 (E.D. Pa. 1995), quoting Sabino v. Junio, 272 A.2d 508, 510 (Pa. 1971). "[T]he burden rests on the party asserting estoppel to establish the defense by clear, precise and unequivocal evidence." Chrysler Credit Corp. v. First Nat'l Bank & Trust Co. of Wash., 746 F.2d. 200, 206 (3d. Cir. 1984). In Pennsylvania, if an insurer fails to timely reserve its rights to deny coverage under a policy, it may be estopped from doing so if the insured can demonstrate actual prejudice. See e.g., Pizzini v. Am. Intern. Specialty Lines Ins. Co., 107 F. App'x 266, 268 (3d Cir. 2004); Mendel v. Home Ins. Co., 806 F. Supp. 1206, 1215 (E.D. Pa. 1992).

In this case, defendant did not deny coverage. Instead, it acknowledged coverage by issuing a payment to plaintiff for $2,000 pursuant to the provision in the bill of lading valuing the damaged property at $500 per container. Therefore, because there was no denial of coverage, there was no requirement that defendant reserve its rights under the Seneca policy.

Though plaintiff fails to identify any authority establishing that an insurer has a duty to reserve its rights to determine valuation under an insurance policy, I find that defendant did sufficiently reserve its rights in its correspondence with plaintiff.[5] Defendant's "catch all" reservation of rights language was sufficient to provide plaintiff notice that it was reserving "all of its rights and defenses . . . under the terms, conditions, provisions and exclusions" of the policy. Dkt. No. 17-6 at 56 (Ex. G).

---

[5] Rather than identifying case law to support its proposition that that defendant had an obligation to reserve its rights to value plaintiff's claim at less than full replacement cost, plaintiff argues that defendant's valuation based on the bill of lading was "essentially denial of coverage." Dkt. No. 18 at ECF p. 24. However, again, plaintiff cites no authority to support this argument. Therefore, I agree with the court in Bowers v. Nationwide Ins. Co., that a dispute regarding valuation is not a denial of coverage. No. 07-1134, 2008 WL 189572, at *3 (M.D. Pa. Jan. 18, 2008) ("Plaintiff may have considered the [insurer's offer to pay only $35,000 under the policy] unfair, or ridiculous, but the mere fact of an offer far below his expectations does not amount to a denial of coverage . . . .").

Because defendant did not deny coverage and sufficiently reserved its rights to determine valuation of plaintiff's claim pursuant to the policy, I find that plaintiff was not reasonable or justified in its stated belief that defendant would pay full replacement costs for the damaged pipes. Plaintiff's statement that it would not have purchased the insurance policy from defendant if the policy did not "protect the property of others in its possession," Dkt. No. 22 at 9, is insufficient to clearly and unequivocally establish that defendant induced such a belief or that plaintiff was reasonable to rely on it. Additionally, plaintiff's "succumbing to the threat of losing a major client and future contracts," Dkt. No. 18 at ECF p. 23, does not establish that plaintiff's decision to reimburse AICI for the full replacement cost of the pipes prior to receiving defendant's coverage determination was reasonable.

## CONCLUSION

I find that no reasonable factfinder could conclude that defendant breached its contract with plaintiff. Defendant was not contractually obligated to remit payment to plaintiff for the full replacement costs of the AICI pipes. Neither did defendant fail to conduct a timely investigation of plaintiff's claim. I also find that defendant is not estopped from denying plaintiff full replacement costs because, on the record before me, there is no genuine issue of material fact with regard to whether defendant induced plaintiff to reasonably rely on a belief that defendant would in fact pay full replacement costs for the damaged pipes. Accordingly, I will grant defendant's motion for summary judgment.

An appropriate Order follows.